UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALICIA NICOLE DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:21-cv-00520 (RC) |
| | ) |
| MEDSTAR GEORGETOWN | ) |
| UNIVERSITY HOSPITAL, | ) |
| | ) |
| Defendant. | ) |

# SEALED

## MEMORANDUM OPINION

Plaintiff Alicia Nicole Davis brings this action against MedStar Georgetown Medical Center, Inc. ("MedStar Georgetown" or "defendant"), and this matter is before the Court on defendant's motion for summary judgment (ECF No. 35). For the reasons discussed below, the Court GRANTS summary judgment for MedStar Georgetown.

## I. SUMMARY JUDGMENT STANDARD

The Court grants summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court's inquiry is essentially

1

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See id.* at 323; Fed. R. Civ. P. 56(c)(1). In response, the non-moving party must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. In doing so, the nonmovant may not rely on "statements that are impermissible hearsay or that are not based on personal knowledge." *Shuler v. District of Columbia*, 744 F. Supp. 2d 320, 327 (D.D.C. 2010) (citation and quotations omitted).

In considering a motion for summary judgment, the Court "eschew[s] making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the nonmovant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). And the Court need not assume the role of advocate for a *pro se* plaintiff. *See Sun v. District of Columbia Gov't*, 133 F. Supp. 3d 155, 168 n.6 (D.D.C. 2015) ("[T]he Court's duty to construe *pro se* filings liberally has its limits, and it is not the Court's job to canvass the record for documents supporting a *pro se* party's position.").

## II. BACKGROUND

### A. Procedural History

Plaintiff, proceeding *pro se*, filed her original complaint (ECF No. 1) on February 23, 2021. Shortly after service of process (ECF No. 8), MedStar Georgetown filed its first motion to dismiss (ECF No. 5) on June 22, 2021. The Court issued an Order (ECF No. 11) on August 3, 2021, denying without prejudice defendant's motion and ordering plaintiff to file an amended complaint. Plaintiff filed her amended complaint (ECF No. 12, "Am. Compl.") on September 1, 2021, and defendant filed its second motion to dismiss (ECF No. 13) on September 7, 2021. The Court denied the motion (ECF No. 20) on April 27, 2022, and defendant filed its answer (ECF No. 21) on May 6, 2022. Pursuant to the Court's May 6, 2022, Minute Order, the parties filed a joint meet and confer statement (ECF No. 23) on May 25, 2022.

The Court issued a scheduling order (ECF No. 24) on May 26, 2022. Among other matters, the scheduling order set September 1, 2022, as the deadline for plaintiff's expert disclosures and reports; December 1, 2022, for defendant's expert disclosures and reports; and February 28, 2023, as the close of fact and expert discovery. Defendant filed its expert report (ECF No. 32) on December 1, 2022; plaintiff has not designated an expert or filed a report.

On July 25, 2022, MedStar Georgetown propounded interrogatories (ECF No. 35-4) and requests for production of documents (ECF No. 35-5), and plaintiff's responses were due by August 24, 2022. *See* Def.'s Mot. to Dismiss for Pl.'s Discovery Failures, or in the Alternative, to Compel Discovery (ECF No. 29, "Mot. to Compel.") ¶ 5. On August 17, 2022, it propounded requests for admission (ECF No. 35-6), and plaintiff's

response was due by September 16, 2022. *See id.* ¶ 7. Because plaintiff did not respond timely to either request, and because the parties were unable to resolve the matter themselves, defendant's counsel contacted Chambers by email (ECF No. 29-7) on September 23, 2023, to request a telephone conference regarding the parties' outstanding discovery. The parties arranged for defendant's counsel to send a courier to plaintiff's residence to retrieve discovery materials from her, and this arrangement yielded plaintiff's interrogatory responses (ECF No. 35-7) and one CD of medical records from Walter Reed National Medical Center. *See* Mem. of P. & A. in Support of Def.'s Mot. for Summ. J. (ECF No. 35-1, "Def.'s Mem.") at 3. Defendant sent plaintiff its requests for admissions again on October 15, 2022; plaintiff did not respond. *See id.* at 2-3, 6-7. Plaintiff made no discovery requests of her own.

Defendant deemed plaintiff's discovery responses deficient, and still the parties were unable to resolve the matter themselves. The Court granted defendant leave to file a motion to compel discovery by minute order on November 7, 2022. On consideration of defendant's motion (ECF No. 29) and plaintiff's responses (ECF Nos. 31, 33), the Court denied the motion without prejudice by minute order on December 7, 2022. There was no docketed activity in the case until March 6, 2023, when, after having held a status hearing, the Court issued a Minute Order scheduling dispositive motions. Defendant filed its summary judgment motion (ECF No. 35) on March 30, 2023; plaintiff filed her opposition (ECF No. 42, "Pl.'s Opp'n") on June 2, 2023; and defendant filed its reply (ECF No. 43, "Reply") on June 26, 2023.[1]

---

[1] Plaintiff has filed two motions to stay proceedings (ECF Nos. 45, 47) and two motions for leave of Court (ECF Nos. 44, 46), suggesting that her opposition to MedStar Georgetown's summary judgment is not the version she intended to file. Plaintiff's opposition deadline was

4

**B. Defendant's Statement of Undisputed Material Facts**

On summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2); *see* LCvR 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."). Under the local rules of this Court, a "motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h)(1). In compliance with Local Civil Rule 7(h), MedStar Georgetown submitted a Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (ECF No. 35-2, "SMF") in 53 sequentially numbered paragraphs with citations to the portions of the record on which it relies. Its exhibits include plaintiff's medical records from MedStar Georgetown (ECF Nos. 36-30), Walter Reed National Military Medical Center (ECF No. 40), and Baltimore Washington Medical Center (ECF No. 40-1), and plaintiff's responses to interrogatories (ECF No. 35-7). Regarding defendant's requests for admission, plaintiff's feeble, and untimely, attempt to respond merely (1) admits that certain medical records designated Exhibits 1-9 are admissible; (2) denies without explanation that these same records are genuine and authentic; and denies that a particular entry dated February 23, 2018, in the medical records reads, "Postpartum Pain Focus Note: Last documented level of pain that is unacceptable . . . 6. Pain

---

June 2, 2023, and to date, neither has clarified her intent nor supplemented her opposition. The Court therefore DENIES plaintiff's motions.

Scale: 6, pain coping: good, Origin of pain: incisional discomfort." Pl.'s Opp'n to Def.'s Mot. for Dismissal, Ex. (ECF No. 33 at 8-9) (Responses to Request Nos. 1-3, 5). Plaintiff failed to respond to Request Nos. 4, 56-53.

As the non-moving party, plaintiff should have filed an opposition "accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement[.]" LCvR 7(h)(1). Plaintiff neither responded to defendant's statement of material facts nor submitted a statement of her own. *See generally* Pl.'s Opp'n. Because plaintiff neither complied with Local Civil Rule 7(h) nor controverts defendant's assertions of fact, the Court treats defendant's assertions as admitted. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996); *Barry v. Haaland*, No. 1:19-cv-3380 (DLF), 2022 WL 4598518, at *1 (D.D.C. Sept. 29, 2022) (treating as conceded any facts asserted in defendant's statement of facts, unless expressly disputed by the evidence, because plaintiff failed to submit a statement of material facts still in dispute supported by citations to the record), *aff'd*, No. 22-5268, 2023 WL 2905253 (D.C. Cir. Apr. 10, 2023) (per curiam). That said, for context, the Court briefly recounts the sparse facts alleged in the amended complaint.

**C. Plaintiff's Factual Allegations**

Plaintiff gave birth to a baby boy by caesarian section at MedStar Georgetown in February 2018. *See* Am. Compl. ¶ 5. She alleged that, on February 23, 2018, "[d]efendant's catering staff," *id*. ¶ 6, served her "molded food," *id*. ¶ 7, which "caused [her] sickness," *id*. ¶ 6. When plaintiff began to eat the meal, she "felt uneasy" and "felt fuzz in her mouth." *Id*. ¶ 7. "She shortly began to vomit," *id*. ¶ 8, and "her stomach violently convuls[ed] . . . as her body

6

tried to expel the contaminated food," *id*. Plaintiff described the pain she experienced as "severely excruciating due to her recovering c-section stitches and surgery and the strain on the core muscles used to expel food when vomiting." *Id*. ¶ 9. She allegedly experienced "extreme pain and stress," as well as "continual bouts of diarrhea coupled with severe cramping," *id*. ¶ 13, bloating, and a distended stomach, *id*. According to plaintiff, these physical "symptoms lasted for months." *Id*. ¶ 14.

Plaintiff also "experienced emotional distress and as a result, [and] was seen by a psychologist." *Id*. And while she continued to experience pain and abdominal cramps, plaintiff "developed complications resulting in her son being released from the hospital in the care of [her] mother at 3 days old." *Id*. ¶ 15. The baby's discharge allegedly caused plaintiff "severe emotional distress," as did the "staff visitation including psychologists and psychiatrists." *Id*.

Plaintiff attributed her predicament to the consumption of food contaminated with salmonella. *See id.* ¶ 10. According to plaintiff, salmonella caused "a condition called post infectious irritable bowel syndrome (IBS), which is a chronic disorder characterized by alternating bouts of constipation and diarrhea, both of which are generally accompanied by abdominal cramping and pain." *Id*. ¶ 12. Plaintiff allegedly "continues to suffer from severe bloating, IBS, and intermittent sharp pains in the abdomen and constant psychological reminders of the horrible experience." *Id*. ¶ 16; *see id*. ¶¶ 14-16.

The amended complaint sets fourth three counts: strict liability (Count I), *see generally id*. ¶¶ 17-22, negligence (Count II), *see generally id*. ¶¶ 23-27, and "Pain, Illness, and Emotional Distress" (Count III), *see generally id*. ¶¶ 13-22. Plaintiff demands an award of $140,000, *id*. at 8, as compensation for pain and suffering and medical, pharmaceutical and travel expenses, among other things, *id*. ¶ 28.

**D. MedStar Georgetown's Proffered Facts**

On February 18, 2018, plaintiff was admitted to MedStar Georgetown for labor and delivery, and she gave birth on February 20, 2018. *See* SMF ¶¶ 1, 3. Although plaintiff claimed to have been served "molded food" on February 23, 2018, causing her to vomit and suffer convulsions, *id*. ¶ 7 (citing Am. Compl. ¶¶ 5-7), there were no reports of vomiting in the hospital records, *see id*. ¶¶ 4, 6, 8, 33, 37, except for one incident on February 24, 2018, at 8:45 a.m., when a nurse reported:

> Pt. vomiting/gagging small amount of clear fluid xl. Pt. insisted she needed to clean the bathroom due to the vomiting although there was nothing on the floor. Pt. insisted on cleaning bathroom herself without assistance from RN or housekeeper.

Def.'s Mem., Ex. 1 at 010290 (ECF No. 37 at 26); *see* SMF ¶ 24.

Plaintiff "had a past medical history which was significant for '█████████ ████████████████.'" SMF ¶ 2. █████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████." *Id*. ¶ 10. █████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████." *Id*. ¶ 11. ███████ ███████████████████████████████████████████, *id*. ¶ 9, ████████████ "████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████," *id*. ¶ 14. "███████████████████████████ ██████████████████████████████████████████████." *Id*. ¶ 15. ███████████ ██████████████████████████ ██████████ ██████████," *id*. ¶ 16 (emphasis in



original), ███████████████████████████████████████████████

███████ ████" *id*. ¶ 17.

By February 24, 2018, although plaintiff "was stable for discharge from obstetric standpoint," *id*. ¶ 21; *see id*. ¶¶ 26, 28, ████████ staff recommended that plaintiff remain at MedStar Georgetown "████████████" for further evaluation and treatment, *id*. ¶ 21. "Plaintiff agreed to prolong her hospital admission ████████████████████." *Id*. ¶ 22; *see id*. ¶ 27.

████████ ████████████████████████████████████████, *see id*. ¶ 29, ██  ████████████████████████████████████████," *id*. ¶ 30, ███████████████████████████████████████████████████████ ████████████████," *id*. ████████████████ ████████ ████████ ████████████████, *id*. ¶ 31, ████████████████ ████████ ████████ ████████" *id*. ¶ 35. Accordingly, plaintiff was discharged from MedStar Georgetown on February 26, 2018. *Id*. ¶ 36.

At no time while plaintiff was a patient at MedStar Georgetown was she diagnosed with food poisoning or salmonella, *see id*. ¶¶ 46-48, and her extended stay at MedStar Georgetown was attributed to ██ ████████████, *id*. ¶¶ 49-50, not "complaints of food poisoning, molded food, or salmonella," *id*. ¶ 49. At no time did plaintiff complain or report "diarrhea, severe abdominal cramping, [or] abdominal distention," *id*. ¶ 51, or seek treatment for "diarrhea, severe abdominal cramping, severe bloating, abdominal distention, vomiting, or irritable bowel syndrome, "intermittent sharp pains in the abdomen," or "constant psychological reminders of the horrible experience" since her February 18, 2018 [MedStar Georgetown] hospital admission," *id*. ¶ 52.

9

Records from obstetrical follow-up appointments at MedStar Georgetown on March 9, 2018, and April 10, 2018, showed no complaints of diarrhea, cramping, bloating, or vomiting, or complaints about her experience at MedStar Georgetown. *See id*. ¶¶ 39-40. Similarly, records from visits to Walter Reed National Military Medical Center in February, May and August 2018, did not show plaintiff complained of or sought treatment for diarrhea, abdominal cramping, bloating, abdominal distention, vomiting, irritable bowel syndrome, abdominal pain, or emotional distress, or complaints about her experience at MedStar Georgetown. *See id*. ¶¶ 41-44.

## III. DISCUSSION

All of plaintiff's claims presume that she has sustained an injury attributable to MedStar Georgetown. *See Whiteru v. Washington Metro. Area Transit Auth.*, 25 F.4th 1053, 1057 (D.C. Cir. 2022) ("Under District of Columbia common law, a plaintiff alleging negligence must establish three elements: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; and (3) the defendant's breach proximately caused the plaintiff's harm.") (citing *Washington Metro. Area Transit Auth. v. Ferguson*, 977 A.2d 375, 377 (D.C. 2009)); *Nationwide Mut. Fire Ins. Co. v. Broan-Nutone, LLC*, No. 1:20-cv-0678 (BAH), 2022 WL 4547948, at *4 (D.D.C. Aug. 19, 2022) (quoting *Warner Fruehauf Trailer Co., Inc. v. Boston*, 654 A.2d 1272, 1274 (D.C. 1995)) (strict liability); *Jones v. Howard Univ., Inc.*, 589 A.2d 419, 424 (D.C. 1991) (emotional distress in "the absence of an accompanying physical injury"). MedStar argues that plaintiff cannot prove two critical elements of her negligence claims: injury and causation.

**A. Plaintiff Fails to Demonstrate She Sustained an Injury**

**1. Defendant's Requests for Admissions and Plaintiff's Failure to Respond**

MedStar Georgetown argues "[p]laintiff has conclusively admitted that she sustained no injuries or damages" by failing to respond adequately, if at all, to its requests for admission. Def.'s Mem. at 6; *see id.* at 9-10.

In relevant part, Federal Rule of Civil Procedure 36 provides:

> **(1) Scope.** A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
> > **(A)** facts, the application of law to fact, or opinions about either; and
> >
> > **(B)** the genuineness of any described documents.
>
> **(2) Form; Copy of a Document.** Each matter must be separately stated. A request to admit the genuineness of a document must be accompanied by a copy of the document unless it is, or has been, otherwise furnished or made available for inspection and copying.
>
> **(3) Time to Respond; Effect of Not Responding.** *A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.* A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.
>
> **(4) Answer.** If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.
>
> **(5) Objections**. The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.

Fed. R. Civ. P. 36(a) (emphasis added). "A matter admitted under this rule is conclusively

established unless the court, on motion, permits the admission to be withdrawn or amended."
Fed. R. Civ. P. 36(b).

Defendant demonstrates that it twice propounded requests for admissions on plaintiff, on August 17, 2022, and October 15, 2022. Plaintiff's response to the first round was due within 30 days, or by September 16, 2022, and defendant shows that plaintiff's only attempted response, submitted on November 30, 2022, in her opposition to its motion to compel discovery or dismiss merely admitted one request (Request No. 3) and denied three others (Request Nos. 1, 2, 5) without explanation. *See* Pl.'s Opp'n to Def.'s Mot. for Dismissal at 8. Defendant further demonstrates that plaintiff failed to respond to the second round, which would have been due on November 15 2022. Accordingly, the Court treats as admitted all MedStar Georgetown's requests for admissions, *see DCFS USA, LLC v. District of Columbia*, 803 F. Supp. 2d 29, 34 n.1 (D.D.C. 2011) (deeming admitted all of plaintiff's Requests for Admission because defendant failed to respond timely); Fed. R. Civ. P. 36(a)(3), and defendant may rely on them in support of its summary judgment motion, *see Essroc Cement Corp. v. CTI/DC, inc.*, 740 F. Supp. 2d 131, 140-41 (D.D.C. 2010).

As a consequence of plaintiff's failure to respond properly to nearly all of MedStar Georgetown's requests for admission, plaintiff admits the following facts:

1. Plaintiff had no episodes of vomiting on February 23, 2018 (*see* Request Nos. 10, 25, 27), had a single episode of "possibly vomiting/gagging a small amount of clear fluid on February 24, 2018, at 8:45 a.m." (Request No. 23), and no further episodes (Request No. 90);

2. Plaintiff did not have diarrhea on February 23, 2018, February 24, 2018, February 25, 2018, or February 26, 2018 (Request Nos. 51, 57, 63, 69), and MedStar

12

Georgetown's medical records make no mention of diarrhea on these dates (Request Nos. 50, 57, 62, 68);

3. Plaintiff did not experience severe abdominal cramping on February 23, 2018, February 24, 2018, February 25, 2018, or February 26, 2018 (Request Nos. 53, 59, 65, 71), and MedStar Georgetown's medical records make no mention of severe abdominal cramping on these dates (Request Nos. 52, 58, 64, 70);

4. Plaintiff's abdomen was not distended on February 23, 2018, February 24, 2018, February 25, 2018, or February 26, 2018 (Request Nos. 55, 61, 66, 71), and MedStar Georgetown's medical records make no mention of plaintiff having distended abdomen on these dates (Request Nos. 54, 60, 66, 72);

5. Plaintiff did not have food poisoning during her admission at MedStar Georgetown in February 2018 (Request No. 81);

6. Plaintiff's extended admission to MedStar Georgetown in February 2018 was not attributable to salmonella; plaintiff had not been diagnosed with food poisoning, or diagnosed with salmonella, or even had salmonella during her admission to MedStar Georgetown in February 2018 (Request Nos. 83-85);

7. Plaintiff did not have and did not raise concerns about severe bloating, irritable bowel syndrome, abdominal pains, or "constant psychological reminders of the horrible experience" at the postpartum visit on March 9, 2018 (Request Nos. 98-105)

8. Plaintiff did not have and did not raise concerns about severe bloating, irritable bowel syndrome, abdominal pains, or "constant psychological reminders of the horrible experience" at the postpartum visit on April 10, 2018 (Request Nos. 116-

23);

9. Plaintiff took a picture of her breakfast tray on February 24, 2018, depicting "mold," or a white substance visible on a single partially-chewed grape which plaintiff did not swallow (Request Nos. 125-33).

As these facts are admitted, plaintiff does not and cannot support her assertion that she sustained physical or emotional injury by having consumed contaminated food while a patient at MedStar Georgetown in February 2018.

### 2. Defendant's Other Discovery Requests and Plaintiff's Failure to Respond

MedStar recounted plaintiff's discovery defaults, *see generally* Def.'s Mem. at 6-7, 18-21, arguing that, "beyond her own bald statements, [she] has failed to provide any meaningful discovery to support her allegations, particularly on the issues of injury, causation and damages," *id*. at 21. For example, defendant asked:

> State precisely and in detail all economic injuries which you claim to have sustained as the result of any alleged act and/or omission of negligence of the Defendant, detailing which injuries/damages are associated with the particular act and/or omission by the Defendant and itemizing all items of monetary loss or damage which you claim has been sustained as a result of the incident complained of, including medical and other expenses, loss of business, income, or revenue. Please attach to your Answers to these Interrogatories any and all documents which may pertain in any manner whatsoever to your Answer to this Interrogatory.

Def.'s Mem., Ex. 4 (Interrogatory No. 13) (ECF No. 35-4 at 7) (emphasis removed). Plaintiff responded:

> This party hereby exercises his option, pursuant to Rule 33[d] to produce a set of business records that contains answers to the subject question[.] This party states that it lacks information or knowledge sufficient to answer the questions presented. Plaintiff objects to Interrogatory 15 on the grounds that it is presented as a continuing interrogatory of damages.

Pl.'s Ans. to Interrog. to Pl. (ECF No. 35-7 at 11) (emphasis removed). Defendant also asked:

14

> State precisely and in detail all non-economic injuries which you claim to have sustained as the result of any alleged act and/or omission of negligence of the Defendant, detailing which injuries are associated with each particular act and/or omission. Please attach to your Answers to these Interrogatories any and all documents which may pertain in any manner whatsoever to your Answer to this Interrogatory.

Def.'s Mem., Ex. 4 (Interrogatory No. 14) (ECF No. 35-4 at 7) (emphasis removed). Plaintiff offered a similar response, stating she "hereby exercises [the] option, pursuant to Rule 33[d] to produce a set of business records that contains answers to the subject question." Pl.'s Ans. to Interrog. to Pl. (ECF No. 35-7 at 11) (emphasis removed). No meaningful response was provided to these interrogatories, and, even if plaintiff were to produce information regarding her economic and non-economic injuries at this late date, as a sanction for her failure to timely respond to defendant's discovery requests, she could not use it at trial. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial[.]"); *Norden v. Samper*, 544 F. Supp. 2d 43, 49–50 (D.D.C. 2008).

### B. Plaintiff's Failure to Designate Expert Witness(es)

Even if plaintiff had not admitted the facts set forth above, MedStar Georgetown argues, alternatively, that plaintiff cannot prove another critical element of her negligence claims – causation. *See* Def.'s Mem. at 10-11. Defendant posits that "this is not a simple case of food poisoning," but instead "presents 'medically complicated questions due to multiple and/or preexisting causes, or questions as to the permanence of an injury.'" *Id*. at 11 (quoting *Baltimore v. B.F. Goodrich Co.*, 545 A.2d 1228, 1231 (D.C. 1988)). As such, defendant argues, expert testimony is required to establish "whether the 'molded food' was contaminated by a pathogen that could cause [her] alleged injuries, and then whether the pathogen did cause the alleged

15

injuries." *Id*.

Generally, an expert witness is not required where the alleged negligence is "within the realm of common knowledge and everyday experience." *District of Columbia v. White*, 442 A.2d 159, 164 (D.C. 1982) (quoting *Matthews v. District of Columbia*, 387 A.2d 731, 734–35 (D.C. 1978)); *see Briggs v. Washington Metro. Area Transit Auth.*, 481 F.3d 839, 845 (D.C. Cir. 2007) ("[U]nder District law, expert testimony is required unless "everyday experience makes it clear that jurors could not reasonably disagree over the care required."). An expert is required in cases where the subject matter is "so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson." *District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C. 1987); *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988). For example, "[e]xpert testimony is generally required to prove a causal connection between an accident and an injury," *Lewis v. Washington Metro. Area Transit Auth.*, 19 F.3d 677, 678–79 (D.C. Cir. 1994), and "in negligence cases which involve issues of safety, security and crime prevention," *Briggs*, 481 F.3d at 845-46 (quoting *Varner v. District of Columbia*, 891 A.2d 260, 267 (D.C. 2006)); *see also Godfrey v. Iverson*, 559 F.3d 569, 572 (D.C. Cir. 2009) (observing that "the D.C. Court of Appeals has required expert testimony in a wider variety of cases, . . . even in those that might initially seem to fall within jurors' common knowledge").

In this case, the Court finds that expert testimony is necessary. To determine whether the food plaintiff consumed was contaminated, what substance (mold or salmonella) contaminated the food, whether that substance could cause the physical and emotional injuries plaintiff sustained, and whether the substance actually did cause plaintiff's injuries, are not within the realm of lay jurors' common knowledge and everyday experience. Rather, such matters call for

evidence "so distinctly related to some science, profession, or occupation," *Peters*, 527 A.2d at 1273, that expert testimony is required.

Plaintiff represented that "she was using the treating physicians and Defendant's Expert due to her exceptional circumstances." Pl.'s Opp'n (ECF No. 42) at 5.[2] If plaintiff intended to have a treating physician testify as an expert, she should have followed Federal Rule of Civil Procedure 26, which requires "a party [to] disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Fed. R. Civ. P. 26(a)(2)(A). Such disclosure entails:

> a written report prepared and signed by the witness [containing] a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B). Plaintiff failed to disclose her expert witness(es) to defendant, and failed to comply with the Court's scheduling order which set September 1, 2022, as the deadline for expert disclosures. Nor did plaintiff even depose her treating physicians to elicit testimony helpful to her claims.

"The purpose of expert opinion testimony is to avoid jury findings based on mere speculation or conjecture." *Lasley v. Georgetown Univ.*, 688 A.2d 1381, 1385 (D.C. 1997)

---

[2] Benjamin Young, M.D., defendant's proposed expert, noted, "The only reference that Ms. Davis had vomited was self-reported, without any objective/independent documentation, with no further complaints thereafter," and opined "there is no clinical association between Ms. Davis's physical condition and the consumption of molded food." Def.'s Rule 26(a)(2) Disclosure of Expert Witnesses (ECF No. 32), Ex. 1 (ECF No. 32-1) at 7.

(quoting *Peters*, 527 A.2d at 1273). Without an expert, there can be no evidence from which a jury reasonably could find a causal connection between defendant's alleged negligence and the alleged physical and emotional injuries plaintiff sustained.

## IV. CONCLUSION

Plaintiff fails to produce any evidence that defendant caused her to suffer an injury rendering defendant liable for damages. The Court therefore grants summary judgment for MedStar Georgetown. An Order is issued separately.

DATE: October 10, 2023

/s/
RUDOLPH CONTRERAS
United States District Judge